IN THE SUPREME COURT OF PENNSYLVANIA
MIDDLE DISTRICT
**TODD, C.J., DONOHUE, DOUGHERTY, WECHT, MUNDY, BROBSON, JJ.**

| | | |
|---|---|---|
| MATTHEW RUSH AND KATHLEEN MCGROGAN-RUSH, | : | No. 77 MAP 2022 |
| | : | |
| | : | Appeal from the Order of the |
| Appellees | : | Superior Court dated October 22, |
| | : | 2021 at No. 1443 EDA 2020 |
| | : | Affirming the Order of the |
| v. | : | Northampton County Court of |
| | : | Common Pleas, Civil Division, dated |
| | : | June 26, 2020 at No. C-48-CV- |
| ERIE INSURANCE EXCHANGE, | : | 2019-01979 |
| | : | |
| Appellant | : | ARGUED:  May 23, 2023 |

## OPINION

**JUSTICE DONOHUE**                                      **DECIDED:  January 29, 2024**

This appeal requires the Court to determine whether a "regular use" exclusion contained in a motor vehicle insurance policy violates the express language of the Motor Vehicle Financial Responsibility Law ("MVFRL").[1]  We hold that as presented in this case, the "regular use" exclusion does not violate the MVFRL.  Thus, we reverse the order of the Superior Court.

## I.    Background

Matthew Rush is a detective for the City of Easton ("City").  On November 28, 2015, Rush sustained serious injuries following a motor vehicle accident in which two drivers crashed into his unmarked 2010 Ford Fusion police car ("Ford").  The Ford was owned by the City's police department and was insured under the City's Business Auto

---

[1]  75 Pa.C.S. §§ 1701-1799.7.

Policy/Fleet Auto Policy issued by Travelers Insurance ("City's Policy"), providing for, inter alia, $35,000 in underinsured motorist coverage ("UIM").[2]

Rush and his wife (collectively, the "Insureds") owned three personal vehicles on two insurance policies through Erie Insurance ("Erie"). The Insureds paid for stacked UIM coverage on both policies ("Erie Policies"). The first policy provided for $250,000 of UIM coverage on one vehicle and the second policy provided for $250,000 of UIM coverage stacked on the other two vehicles. The Erie Policies both included identical "regular use" exclusion clauses, which limited the scope of UIM coverage under the policies. Specifically, under the "regular use" exclusion, UIM coverage does not apply to

> Bodily injury to "you" or a "resident" using a non-owned "motor vehicle" or a "non-owned" miscellaneous vehicle which is regularly used by "you" or a "resident," but not insured for uninsured [("UM")] or [UIM] Coverage under this policy.

Trial Court Opinion, 6/26/2020, at 3. The parties have agreed that the Insureds did not own or insure the Ford on their Erie Policies, and that Rush regularly used the car for work.

The insurance companies for the other drivers and the City provided Insureds with their policy limits. However, because Rush's injuries and damages exceeded the liability insurance limits of the tortfeasors and the UIM coverage limits of the City's Policy, the Insureds subsequently filed a claim for UIM benefits under the Erie Policies. Erie denied coverage based on the "regular use" exclusion.

On March 7, 2019, the Insureds commenced the underlying declaratory judgment action in the Northampton County Court of Common Pleas, seeking a determination of whether Erie can limit the scope of its UIM coverage through the "regular use" exclusion.

---

[2] UIM coverage is designed "to protect the insured (and his additional insureds) from the risk that a negligent driver of another vehicle will cause injury to the insured (or his additional insureds) and will have inadequate coverage to compensate for the injuries caused by his negligence." *Paylor v. Hartford Ins. Co.*, 640 A.2d 1234, 1236 (Pa. 1994).

On December 9, 2019, the parties filed cross-motions for summary judgment. On June 26, 2020, the trial court entered partial summary judgment in favor of the Insureds, holding that the "regular use" exclusion in the Erie Policies violates the MVFRL. Trial Court Order, 6/26/2020, at 1. Erie appealed to the Superior Court, which unanimously affirmed the trial court's order in a published opinion. *Rush v. Erie Ins. Exch.*, 265 A.3d 794 (Pa. Super. 2021).

In its opinion, the Superior Court observed that Section 1731 of the MVFRL governs the scope of UIM coverage in Pennsylvania. *Id.* at 796 (citing 75 Pa.C.S. § 1731).[3] Specifically, it highlighted that Section 1731(c) provides that "absent a rejection

---

[3] Section 1731 provides in relevant part:

> **(a) Mandatory offering.--**No motor vehicle liability insurance policy shall be delivered or issued for delivery in this Commonwealth, with respect to any motor vehicle registered or principally garaged in this Commonwealth, unless uninsured motorist and underinsured motorist coverages are offered therein or supplemental thereto in amounts as provided in section 1734 (relating to request for lower limits of coverage). Purchase of uninsured motorist and underinsured motorist coverages is optional.

> *       *       *

> **(c) Underinsured motorist coverage.--**Underinsured motorist coverage shall provide protection for persons who suffer injury arising out of the maintenance or use of a motor vehicle and are legally entitled to recover damages therefor from owners or operators of underinsured motor vehicles. The named insured shall be informed that he may reject underinsured motorist coverage by signing the following written rejection form:

> **REJECTION OF UNDERINSURED MOTORIST PROTECTION**

> By signing this waiver I am rejecting underinsured motorist coverage under this policy, for myself and all relatives residing

(continued…)

in my household. Underinsured coverage protects me and relatives living in my household for losses and damages suffered if injury is caused by the negligence of a driver who does not have enough insurance to pay for all losses and damages. I knowingly and voluntarily reject this coverage.

Signature of First Named Insured

_____

Date

_____

**(c.1) Form of waiver.--**Insurers shall print the rejection forms required by subsections (b) and (c) on separate sheets in prominent type and location. The forms must be signed by the first named insured and dated to be valid. The signatures on the forms may be witnessed by an insurance agent or broker. Any rejection form that does not specifically comply with this section is void. If the insurer fails to produce a valid rejection form, uninsured or underinsured coverage, or both, as the case may be, under that policy shall be equal to the bodily injury liability limits. On policies in which either uninsured or underinsured coverage has been rejected, the policy renewals must contain notice in prominent type that the policy does not provide protection against damages caused by uninsured or underinsured motorists. Any person who executes a waiver under subsection (b) or (c) shall be precluded from claiming liability of any person based upon inadequate information.

**(d) Limitation on recovery.--**

(1) A person who recovers damages under uninsured motorist coverage or coverages cannot recover damages under underinsured motorist coverage or coverages for the same accident.

(2) A person precluded from maintaining an action for noneconomic damages under section 1705 (relating to election of tort options) may not recover from uninsured motorist coverage or underinsured motorist coverage for noneconomic damages.

75 Pa.C.S. § 1731.

of coverage, insurers shall provide UIM coverage that 'protect[s] persons who suffer injury arising out of the maintenance or use of a motor vehicle and are legally entitled to recover damages therefor from owners or operators of underinsured motor vehicles.'" *Id.* (citing 75 Pa.C.S. § 1731(c)). Based upon this language, the Superior Court concluded that Section 1731(c) "mandates" insurers to provide coverage when the insured: (1) suffers injuries arising out of the maintenance or use of a motor vehicle, (2) is legally entitled to recover damages from the at-fault underinsured driver; and (3) has not rejected UIM benefits by signing a valid rejection form. *Id.* at 796-97.

The Superior Court further emphasized that Section 1731 defines the scope of UIM coverage broadly, as such coverage is required whenever an insured suffers injuries "arising out of the … use of **a** motor vehicle." *Id.* at 797 (quoting 75 Pa.C.S. § 1731(c)) (emphasis in original) (internal quotations omitted). According to the court, Section 1731 considers neither the owner of the vehicle nor the frequency with which the insured uses it. *Id.* The Superior Court concluded that the "regular use" exclusion conflicts with the broad language of Section 1731(c)'s coverage mandate because it limits "the scope of UIM coverage required by Section 1731 by precluding coverage if an insured is injured while using a motor vehicle that the insured regularly uses but does not own." *Id.*

Additionally, the court rejected Erie's reliance on this Court's decision in *Williams v. GEICO Government Employees Insurance Co.*, 32 A.3d 1195 (Pa. 2011), in which we addressed "whether the regular-use exclusion, as applied to a state trooper is void as against a public policy that favors protecting first responders." *Id.* at 1199. According to the intermediate appellate court, in *Williams*, this Court held that a state trooper did not meet his burden of establishing that the "regular use" exclusion violated the public policy supporting the MVFRL. *Rush*, 265 A.3d at 797 (citing *Williams*, 32 A.3d at 1206). Although the Superior Court observed that the *Williams* Court stated that the "regular use"

exclusion clause in that case did not violate the express terms of the MVFRL, the Superior Court determined that this comment in *Williams* constituted non-binding dicta[4] because it was not subsumed by the issue granted for review. *Id.* at 797-98. Moreover, the Superior Court observed that in reaching its conclusion, the *Williams* Court relied upon *Erie Insurance Exchange v. Baker*, 972 A.2d 507 (Pa. 2008) (plurality) (upholding the validity of the household vehicle exclusion to preclude UIM coverage), which this Court abrogated in *Gallagher v. GEICO Indemnity Co.*, 201 A.3d 131 (Pa. 2019).

Erie filed a petition for allowance of appeal of the Superior Court's decision, which we granted to address the following issue, as phrased by Erie:

> Whether the decision of the three-judge panel of the Superior Court is in direct conflict with the Pennsylvania Supreme Court decisions in *Burstein v. Prudential Prop. & Cas. Ins. Co.*, 809 A.2d 204 (Pa. 2022) and *Williams v. GEICO Gov't Emps. Ins. Co.*, 32 A.3d 1195 (Pa. 2011), and whether the Superior Court erred as a matter of law by finding that the "regular use exclusion" contained in Pennsylvania auto insurance policies violates the [MVFRL]?

*Rush v. Erie Ins. Exch.*, 281 A.3d 298 (Pa. 2022) (per curiam).

## II.     Parties' Arguments

**Erie's Arguments**

In its brief to this Court, Erie argues that by finding that a "regular use" exclusion violates the MVFRL, the Superior Court has disregarded decades of precedent. Erie's Brief at 12-13. According to Erie, the first time this Court considered the validity of the "regular use" exception was in *Burstein v. Prudential Property & Casualty Insurance Co.*, 809 A.2d 204 (Pa. 2002), wherein the Court held that the "regularly used, non-owned car exclusion and its contractual restraint on UIM portability comport with the underlying

---

[4]  *Obiter dictum*, BLACK'S LAW DICTIONARY (11th ed. 2019) ("A judicial comment made while delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential (although it may be considered persuasive).").

policies of the MVFRL." Erie's Brief at 15 (quoting *Burstein*, 809 A.2d at 210). Nine years later, this Court reaffirmed *Burstein* in *Williams*, wherein this Court rejected a claimant's challenge that a "regular use" exclusion violated 75 Pa.C.S. § 1731. Erie insists that *Burstein* and *Williams* remain controlling law. Erie's Brief at 15-17.

Erie proceeds to argue that the Superior Court misunderstood and misapplied the controlling precedent, highlighting that the court ignored *Burstein* and its progeny. *Id.* at 18. This, it emphasizes, is demonstrated by the intermediate appellate court's suggestion that the issue before it was one of "first impression," wholly ignoring *Burstein* and "inexplicably label[ing]" this Court's finding regarding "regular use" exclusions in *Williams* as dicta. *Id.* at 18-19. Erie insists that the language in *Williams* does not constitute dicta because the claimant in that matter "expressly argued that the 'regular use exclusion' violates 75 Pa.C.S. § 1731." *Id.* at 20 (citing *Williams*, 32 A.3d at 1199). The Superior Court's labeling *William*'s finding as dicta, according to Erie, was erroneous and disregarded the principles of stare decisis. *Id.* at 23.

Building on this premise, Erie argues that the Superior Court incorrectly questioned whether *Williams* was overruled by *Gallagher*, as *Gallagher* dealt with a "household exclusion," not a "regular use" exclusion, and involved different facts. *Id.* at 24-25. As Erie argues, *Gallagher* said nothing about Section 1731, as it dealt specifically with Section 1738 of the MVFRL, i.e., the stacking provision. *Id.* at 25. To Erie, the only explanation for the Superior Court's reasoning is that *Gallagher* essentially overruled *Baker*, and the *Williams* Court relied on *Baker* in finding that a "regular use" exclusion did not violate the MVFRL. *Id.* at 25-26. Erie argues that the Superior Court's conclusion that *Gallagher* overruled *Williams* sub silentio "necessitates multiple logical leaps that ignore the verbiage of both *Williams* and *Gallagher* entirely." *Id.* at 25. Further, Erie asserts that the Superior Court overstated the *Williams* Court's reliance on *Baker*, as

*Baker* was merely cited as an example of a case where a different exclusion had been upheld as valid against arguments concerning violations of unrelated statutory provisions. *Id.* at 26. Thus, in Erie's view, *Baker* being overruled has no bearing on the validity of *Williams*.

Erie then takes the position that the Superior Court misapplied Section 1731 of the MVFRL, accusing the court of "conjur[ing] a three-prong test" from the language of Section 1731.[5] *Id.* at 27. According to Erie, this is a misapprehension of the language of the statute and its underlying policy goals. *Id.* at 28. It is Erie's position that the Superior Court conflated Section 1731's requirements that insurers offer UIM coverage in the policies it issues with a requirement that insurers are mandated to pay such coverage in every circumstance. *Id.* at 31. Erie, however, asserts that that the statute does not even remotely suggest that if a person purchases UIM coverage, it must be paid regardless of the circumstances. *Id.* at 32. As Erie contends, "UM/UIM benefits are offered and purchased, [and] they are recoverable absent valid limitations and exclusions, including the 'regular use exclusion.'" *Id.* at 33.

---

[5] As Erie states the Superior Court's test:

> [I]n order for payment of such benefits to become mandatory, regardless of policy provisions or exclusions, an insured must demonstrate that they:
>
> (1) have suffered injuries arising out of the maintenance or use of a motor vehicle;
>
> (2) be legally entitled to recover damages from the at-fault underinsured driver; and
>
> (3) have not rejected UIM coverage by signing a valid rejection form.

Erie's Brief at 27.

Erie then highlights that in *Hall v. Amica Mutual Insurance Co.*, 648 A.2d 755 (Pa. 1994), this Court explained "that the mere absence of an exclusion within the MVFRL does not serve to invalidate it." Erie's Brief at 34 (citing *Hall*, 648 A.2d at 759). In other words, the MVFRL allows insurers to set forth exclusions in policies, so long as they do not conflict with express statutory mandates. *Id.* at 34-35. With respect to the "regular use" exclusion, Erie asserts that, consistent with this Court's holdings, nothing in the MVFRL either precludes reasonable policy limitations such as the "regular use" exclusion from being administered or requires UM/UIM benefits to be paid under all circumstances. *Id.* at 37.

Erie then shifts its focus to the underlying purpose of Section 1731. According to Erie, the General Assembly added Section 1731 to the MVFRL to make UM/UIM benefits optional, evincing a desire to cut the cost of automobile insurance. *Id.* at 40. In finding that Section 1731 mandates UM/UIM coverage when elected and triggered, the Superior Court effectively created "unlimited and unmitigated risk to insurers not previously seen or recognized in the Commonwealth of Pennsylvania, or anywhere else for that matter." *Id.* Erie argues that the Superior Court's decision will incentivize insurers to raise premiums to cover the possibility that people can regularly drive non-owned cars with gratis UM/UIM coverage. *Id.* at 40-41.

Lastly, Erie points out that, throughout this litigation, the Insureds have challenged the "regular use" exclusion by invoking other provisions of the MVFRL, namely Sections

1733[6] and 1738.[7]  *Id.* at 47-48.  As Erie explains, Section 1733 addresses priority of recovery of UM/UIM coverage and the interplay between UM/UIM policies, and Section

---

[6] Section 1733, entitled "Priority of recovery," provides as follows:

> **(a) General rule.--**Where multiple policies apply, payment shall be made in the following order of priority:
>
> > (1) A policy covering a motor vehicle occupied by the injured person at the time of the accident.
> >
> > (2) A policy covering a motor vehicle not involved in the accident with respect to which the injured person is an insured.
>
> **(b) Multiple sources of equal priority.--**The insurer against whom a claim is asserted first under the priorities set forth in subsection (a) shall process and pay the claim as if wholly responsible. The insurer is thereafter entitled to recover contribution pro rata from any other insurer for the benefits paid and the costs of processing the claim.

75 Pa.C.S. § 1733.

[7] Section 1738, entitled "Stacking of uninsured and underinsured benefits and option to waive," provides, in relevant part, as follows:

> **(a) Limit for each vehicle.--**When more than one vehicle is insured under one or more policies providing uninsured or underinsured motorist coverage, the stated limit for uninsured or underinsured coverage shall apply separately to each vehicle so insured. The limits of coverages available under this subchapter for an insured shall be the sum of the limits for each motor vehicle as to which the injured person is an insured.
>
> **(b) Waiver.--**Notwithstanding the provisions of subsection (a), a named insured may waive coverage providing stacking of uninsured or underinsured coverages in which case the limits of coverage available under the policy for an insured shall be the stated limits for the motor vehicle as to which the injured person is an insured.
>
> **(c) More than one vehicle.--**Each named insured purchasing uninsured or underinsured motorist coverage for more than one vehicle under a policy shall be provided the opportunity

(continued…)

1738 is the stacking statute. *Id.* at 48. Erie submits that neither of these statutes are implicated in this case and further observes that the Superior Court appears to have reached this conclusion, as it did not address these statutes. *Id.* at 47-48.

Regarding Section 1738, Erie explains that, per this Court's decision in *Generette v. Donegal Mutual Insurance Co.*, 957 A.2d 1180 (Pa. 2008), when a claimant is a "guest passenger" occupying a non-owned vehicle, the concept of stacking under Section 1738 is immaterial because guest passengers are not covered "insured" drivers for purposes of the statute. *Id.* at 50-53. Then focusing on Section 1733, Erie notes that the Insureds isolate the statutory phrase "payment shall be made" in arguing that the regular use exception violates Section 1733 because it circumvents this mandatory language. *Id.* at 56-57. Erie argues that this premise leads to the same absurd results of voiding all exclusions and policy limits, undoing decades of precedent, an argument, Erie asserts, this Court has rejected on numerous occasions, including in *Burstein*. *Id.* at 57-58.

---

to waive the stacked limits of coverage and instead purchase coverage as described in subsection (b). The premiums for an insured who exercises such waiver shall be reduced to reflect the different cost of such coverage.

**(d) Forms.--**

\* \* \*

**UNDERINSURED COVERAGE LIMITS**

By signing this waiver, I am rejecting stacked limits of underinsured motorist coverage under the policy for myself and members of my household under which the limits of coverage available would be the sum of limits for each motor vehicle insured under the policy. Instead, the limits of coverage that I am purchasing shall be reduced to the limits stated in the policy. I knowingly and voluntarily reject the stacked limits of coverage. I understand that my premiums will be reduced if I reject this coverage.

75 Pa.C.S. § 1738.

**The Insureds' Arguments**

In response, the Insureds argue that the "regular use" exclusion violates Section 1731(c) of the MVFRL, and thus Erie's use of the "regular use" exclusion to deny them coverage is improper. Insureds' Brief at 8. In particular, the Insureds emphasize the mandatory nature of the term "shall" as it is used in Section 1731: "[UIM] coverage **shall** provide protection for persons who suffer injury arising out of the maintenance or use of a motor vehicle and are legally entitled to recover damages therefor from owners or operators of underinsured motor vehicles." *Id.* at 17 (quoting 75 Pa.C.S. § 1731(c)) (emphasis added by Insureds) (internal quotations omitted). Accordingly, they agree with the Superior Court's assessment that Section 1731 expressly mandates UIM coverage be provided to an insured when the insured satisfies the three requirements. *Id.* In addition, the Insureds agree with the Superior Court's finding that "Section 1731 does not consider who owns the vehicle and the frequency with which the insured uses it." Insureds' Brief at 17 (quoting *Rush*, 265 A.3d at 796). The application of the "regular use" exclusion, according to the Insureds, limits the scope of the UIM coverage that Erie is required to provide, and thus it is unenforceable. *Id.* at 18.

Moreover, the Insureds highlight that since the Superior Court decided this case, two federal courts have determined that the Superior Court's analysis and reasoning were sound, further predicting that this Court would reach the same conclusion. *Id.* at 18-19. *See Evanina v. First Liberty Ins. Corp.*, 587 F.Supp.3d 202 (M.D. Pa. 2022); *Johnson v. Progressive Advanced Ins. Co.*, 587 F.Supp.3d 277 (W.D. Pa. 2022). To the Insureds, this demonstrates that the General Assembly placed no limit on the scope of coverage out of recognition of that the fact that "everyday citizens regularly use vehicles they do not own and do not insure under their personal auto policies." Insureds' Brief at 19-20. This, they argue, runs contrary to Erie's concerns that the "regular use" exclusion is

needed to insure against the "unknown." *Id.* at 20. The Insureds then contend that Erie's position is absurd in light of the fact that it acknowledges that it must cover injuries sustained when an insured is a passenger in a non-owned vehicle, but not when the insured is the driver. *Id.* at 21 (citing *Erie Ins. Exch. v. E.L.*, 941 A.2d 1270 (Pa. Super. 2008) (finding that the term "use" as used in an insurance policy's "regular use" exclusion does not include occupancy of the regularly used non-owned vehicle as a passenger)); *see also* Erie's Brief at 33 n.14 (acknowledging that it would afford coverage to "a passenger of any vehicle").

The Insureds argue that, based on this Court's decision in *Generette*, their interpretation of Section 1731 is bolstered by the language employed in Section 1733 of the MVFRL. Insureds' Brief at 24-25. To the Insureds, by placing the primary obligation for payment of UIM benefits on the insurer of the non-owned vehicle, and then placing an additional obligation upon the issuer of the insured's personal policy, the General Assembly demonstrated that it knew insureds would be "occupying"[8] non-owned vehicles and that it intended for personal policies to provide coverage under those circumstances. *Id.* The Insureds further challenge Erie's argument by highlighting that the Superior Court followed this Court's lead in *Gallagher*, insofar as we found that an insurer can no longer argue that it was unaware of its insureds' use of other vehicles to justify an exclusion when it is clear that the insurer knows of the risk. *Id.* at 27-28.

As for the cases relied upon by Erie, the Insureds argue that the Superior Court correctly concluded that the language in *Williams* constituted mere dicta, as *Williams*, like *Burstein*, only addressed a general public policy issue with respect to the "regular use" exclusion. *Id.* at 30-31. The Insureds assert that they are not raising a public policy issue,

---

[8] *Generette* involved an insured guest passenger in a non-owned vehicle, whereas the instant matter involves the driver of the non-owned vehicle, and the "regular use" exclusion was not invoked in *Generette*.

but rather that the "regular use" exclusion is in direct violation of Section 1731(c)'s express mandates. *Id.* at 32-33. According to them, "this Court has repeatedly held that it applies a very different analysis with a very different burden of proof when the issue is whether an exclusion violates the express terms of the statute, as opposed to general public policy." *Id.* at 33 (citing *Sayles v. Allstate Ins. Co.*, 219 A.3d 1110, 1122-23 (Pa. 2019)).

Alternatively, the Insureds argue, if this Court finds that *Williams* did hold that a "regular use" exclusion does not violate Section 1731, it still does not constitute binding precedent. *Id.* at 39. The Insureds note that, to the extent that the *Williams* Court held that a "regular use" exception did not violate the MVFRL, it did so by relying on *Baker*. *Id.* at 39-41. *Gallagher* explicitly disavowed and otherwise overruled *Baker*. *Id.* at 42-43. Consequently, the Insureds argue, that *Williams*' reliance on *Baker* undermines the continuing validity of *Williams*. *Id.* at 45-46.

The Insureds further argue that the "regular use" exclusion violates Section 1733(a)(2) of the MVFRL, because it deprives them of second priority UIM coverage from their policies simply because Rush was injured while operating a non-owned vehicle that he did not insure. *Id.* at 51-52 (citing *Generette*, 957 A.2d at 1189).[9] In addition, the Insureds claim that the exclusion violates Section 1738 of the MVFRL, i.e., the stacking provision. *Id.* at 53. In support, they highlight that they purchased stacked coverage; thus, in their view, they are entitled to both inter- and intra-policy stacking of the coverages, meaning that their limits of coverage "shall be the sum of the limits for each motor vehicle as to which the injured person is an insured." *Id.* at 53 (quoting 75 Pa.C.S. § 1738). However, because the "regular use" exclusion reduces the available limits of coverage to "$0," the Insureds contend that they are denied the stacked coverage for which they have paid. *Id.* They urge this Court to find that the regular use exclusion is

_____

[9] We again clarify that *Generette* involved neither an operator of a non-owned vehicle, nor did it implicate a "regular use" exclusion.

an improper, disguised waiver of stacked UIM coverage, which is prohibited under *Gallagher*. *Id.* at 54-55.

Lastly, the Insureds argue that Erie's interpretation of Section 1731 would lead to absurd results. *Id.* at 55. They argue that if Erie's position were valid, then Erie could add UIM exclusions to preclude coverage in any number of circumstances, such as if an insured drives in an urban area because the risk of accident increases when the insured "regularly drives in traffic." *Id.* at 59. Permitting insurance companies to "arbitrarily determine the standard for the 'unacceptable unknown risk'" by including these types of exceptions in light of the statutes that make up the MVFRL would be, according to the Insureds, absurd. *Id.* at 60.

**Amicus**

The Insurance Federation of Pennsylvania, the Pennsylvania Association of Mutual Insurance Companies, and the Pennsylvania Defense Institute filed a joint amici brief in support of Erie. Their argument is almost exclusively that this Court is bound by its prior decisions, such as *Burstein* and *Williams*, and that this Court should favor principles of stare decisis by continuing to hold that the "regular use" exclusion does not violate the MVFRL. Amici Brief at 5-14.

In support of the Insureds, the Pennsylvania Association for Justice ("PAJ") submitted an amicus brief arguing that this Court should apply our holding in *Gallagher* broadly to hold that the "regular use" exclusion, like the "household" exclusion at issue in *Gallagher*, is violative of the express and unambiguous terms of the MVFRL. PAJ's Amicus Brief at 7-13.

**III.    Discussion**

The question before this Court is whether the "regular use" exclusion in a motor vehicle insurance policy violates the express terms of the MVFRL. The issue presented

is one of pure law. Thus, our scope of review is plenary and our standard of review is de novo. *Generette*, 957 A.2d at 1189.

When reviewing an insurance policy, we apply general principles of contract interpretation in order to "ascertain the intent of the parties as manifested by the terms used in the written insurance policy." *Gallagher*, 201 A.3d at 137 (quoting *401 Fourth St., Inc. v. Inv. Ins. Grp.*, 879 A.2d 166, 171 (Pa. 2005)). However, insurance contract provisions are invalid and unenforceable if they conflict with statutory mandates, as contracts cannot violate existing statutory law. *Prudential Prop. & Cas. Ins. Co. v. Colbert*, 813 A.2d 747, 750-51 (Pa. 2002); *see also Miller v. Allstate Ins. Co.*, 763 A.2d 401, 404 ("Even clear and unambiguous insurance policy language may conflict with an applicable statute. … In such situations, we cannot give effect to the contractual provision.") (citation omitted)). As the parties do not dispute that the "regular use" exclusion is unambiguous insofar as it would preclude the Insureds from receiving UIM benefits under the language of the Erie Policies, we turn our discussion to whether Erie's "regular use" exclusion runs afoul of the MVFRL.

By way of necessary background, we note that the "[MVFRL] is comprehensive legislation governing the rights and obligations of the insurance company and the insured under liability insurance policies covering motor vehicles." *Sayles*, 219 A.3d at 1124. Accordingly, "the provisions of the MVFRL pertaining to the required scope of coverage and content of automobile insurance policies, and benefits payable thereunder, impose mandatory obligations applicable to all automobile insurance providers in this Commonwealth[.]" *Id.* As relevant to this matter, Section 1731 of the MVFRL governs the scope of UIM coverage. Section 1731 provides, in relevant part, that absent a voluntary rejection of coverage, "[UIM coverage] shall provide protection for persons who suffer injury arising out of the maintenance or use of a motor vehicle and are legally

entitled to recover damages therefor from owners or operators of underinsured motor vehicles." 75 Pa.C.S. § 1731(c). Insurers in Pennsylvania are obligated to offer UIM coverage to their customers.[10] However, to afford insurers more control over the costs of insurance, the General Assembly made the purchase of UM and UIM coverage optional when it passed the MVFRL. *Lewis v. Erie Ins. Exch.*, 793 A.2d 143, 150 (Pa. 2002).

Erie concedes that it is obligated by law to offer UIM coverage to its insureds, but it contends that the MVFRL does not require insurance companies to pay out UIM benefits under any particular circumstance. Erie's Brief at 32. A "regular use" exclusion, like the one instantly before this Court, presents the type of circumstances in which an insurer may not be required to provide UIM benefits to the insured. That is, of course, contingent upon whether the exclusion violates the MVFRL. As the parties rightfully identify, this Court has previously upheld the validity of "regular use" exclusions in *Burstein* and *Williams*. The Insureds have not expressly asked that we overrule these decisions. Nonetheless, their request would require us to do so if we find that those decisions to uphold the exclusion are controlling. Thus, as a threshold matter, we must determine whether those decisions control the outcome of this appeal.

In *Burstein*, Mrs. Burstein was injured in a collision with an underinsured motorcyclist while driving a work-issued vehicle that was available for her use both at

---

[10] Section 1731(a) provides:

> **(a) Mandatory offering.--**No motor vehicle liability insurance policy shall be delivered or issued for delivery in this Commonwealth, with respect to any motor vehicle registered or principally garaged in this Commonwealth, unless uninsured motorist and underinsured motorist coverages are offered therein or supplemental thereto in amounts as provided in section 1734 (relating to request for lower limits of coverage). Purchase of uninsured motorist and underinsured motorist coverages is optional.

75 Pa.C.S. § 1731(a).

work and at home. *Burstein*, 809 A.2d at 205. After the accident, the Bursteins submitted a claim for UIM benefits under their household policy, which contained a "regular use" exclusion. Although the Bursteins maintained UIM coverage on the household policy, Mrs. Burstein's employer had waived UIM coverage on the work-issued vehicle involved in the accident. *Id.* Following the insurer's denial of UIM coverage, the Bursteins sued their insurance provider, challenging the "regular use" exclusion on the basis that it violated public policy. *Id.* In support of this claim, the Bursteins made "broad claims about the universal portability of UM and UIM coverage[,]"[11] considering it to be "first party coverage" that follows the person, rather than the vehicle. *Id.* at 208-09.

Addressing the case on appeal, we focused primarily on the public policy that led to the enactment of the MVFRL, i.e., the increasing cost of automobile insurance. *Id.* at 207-08. The *Burstein* Court reasoned that to invalidate an otherwise valid insurance contract exclusion with that public policy in mind would be "arduous." *Id.* at 208. However, it recognized that such a policy concern could "not validate any and every coverage exclusion; rather, it functions to protect insurers against forced underwriting of unknown risks[.]" *Id.* The *Burstein* Court found that to void the "regular use" exclusion would frustrate this public policy concern of cost containment, reasoning that insurers "would be compelled to underwrite unknown risks that it has not been compensated to insure" and that insureds would be encouraged to obtain UIM coverage on one car and then "drive an infinite number of non-owned vehicles, and receive gratis UIM coverage on all those vehicles[.]" *Id.* To invalidate the "regular use" exclusion, according to the *Burstein* Court, would force insurers "to increase the cost of insurance, which is precisely what the public policy behind the MVFRL strives to prevent." *Id.*

---

[11] As then-Justice Saylor opined in his concurring and dissenting opinion in *Generette*, for purposes of Section 1731, there is no discernible basis to distinguish UM and UIM coverage with respect to limitations of coverage. *See Generette*, 957 A.2d at 1195 n.6 (Saylor, J., concurring and dissenting).

In reviewing the Bursteins' broad portability claims, i.e., that UIM insurance constituted first party coverage that followed the person, the Court turned to the priority of recovery of first party benefits[12] under the MVFRL's statutory scheme. *Id.* at 209. In so doing, the Court gleaned that first party benefits truly "follow the person." *Id.* In comparing the priority of first party benefits to the priority of UIM coverage, the *Burstein* Court found that "the MVFRL provides an inverse priority of recovery for UM and UIM benefits." *Id.* Specifically, based on Section 1733 of the MVFRL, an injured claimant must first recover UIM coverage from any policy covering the "**motor vehicle**" occupied by the injured person at the time of the accident, *id.* (citing 75 Pa.C.S. § 1733(a)(1)) (emphasis in original), and as a "**secondary**" source of recovery, claimants could then recover from a policy on a motor vehicle that was not involved in the accident, *id.* (citing 75 Pa.C.S. § 1733(a)(2)) (emphasis in original). Thus, it reasoned, that, under the statute, UIM benefits did not necessarily "follow the person" in the same manner as first party benefits. *Id.*

The Court made clear that the "only issue" before it was whether the "regular use" exclusion "violate[s] a clearly expressed public policy." *Id.* In finding it did not, we upheld the "regular use" exclusion on public policy grounds, i.e., cost containment. In doing so, we rejected the argument that UIM coverage was intended to be portable based upon a textual analysis of the MVFRL.

Then-Justice Saylor authored a dissenting opinion, in which he set forth a detailed discussion of the history of motor vehicle coverage in the Commonwealth, the evolution

---

[12] The MVFRL defines "first party benefits" as "[m]edical benefits, income loss benefits, accidental death benefits and funeral benefits." 75 Pa.C.S. § 1702 ("Benefits" or "First party benefits"). Such benefits are recovered in the following priority: (1) for a named insured, the policy on which he is the named insured; (2) for an insured, the policy covering the insured; and (3) for the occupants of an insured motor vehicle, the policy on that motor vehicle. 75 Pa.C.S. § 1713 ("Source of benefits").

of UIM coverage, and the concept of portability. *Id.* at 210-34 (Saylor, J., dissenting). The principal basis for Justice Saylor's dissent was that contrary to the *Burstein* Majority's suggestion that the General Assembly "was content to delegate to insurers" the ability to dictate the parameters of coverage in Pennsylvania, *id.* at 210, it intended for the Pennsylvania Insurance Department to promulgate and enforce regulations with respect to UIM coverage, *id.* at 230.[13]

Justice Saylor opined that the question at the "center of [the] appeal" was whether the General Assembly intended to incorporate a fixed concept of portability in the MVFRL, thereby foreclosing the use of coverage exclusions. *Id.* at 221. To answer this question, Justice Saylor tracked the evolution of portability and coverage exclusions in Pennsylvania, ultimately determining that this Court's interpretation of the MVFRL demonstrated that the General Assembly did not intend to fix a concept of portability in the MVFRL. *Id.* at 230. Critical of the courts for relying primarily on the policy of cost containment and ignoring the other remedial purposes underlying the MVFRL to reach this conclusion,[14] Justice Saylor observed that such judicial preference for cost

---

[13] Justice Saylor set forth an alternative basis to decide in the Bursteins' favor, contending that based on the definition of "non-owned car" in the Bursteins' policy that the "regular use" exclusion was inapplicable. Recognizing that "regular use" exclusion only applies to non-owned vehicles that are furnished for an insured's regular use, Justice Saylor looked to the definitions set forth in the Bursteins' policy in which it defined a "non-owned car" as "a **car** which is not owned by, registered in the name of or furnished or available for the regular or frequent use of **you** or a **household resident**[.]" *Burstein*, 809 A.2d at 232-33 (Saylor, J., dissenting) (emphasis in original). Given that it was "undisputed that the company car in which the Bursteins were injured was available for their regular use, such a car [was] simply not a 'non-owned car' for purposes of the policy." *Id.* at 233.

[14] In recent years, a majority of the members of this Court have repeatedly critiqued the view that "cost containment" is the predominant goal of the MVFRL. *See, e.g., Safe Auto Ins. Co. v. Oriental-Guillermo*, 214 A.3d 1257, 1268 (Pa. 2019) (noting that "a majority of members of this Court have indicated that cost containment should not be considered the dominant public policy underlying the MVFRL"); *Williams*, 32 A.3d at 1209-10 (Saylor, J., concurring) ("I would also once and for all abandon the rubric that cost containment was (continued…)

containment in rejecting portability afforded insurers effectively unlimited authority to include any exclusion of coverage they so desired. *Id.* at 229-30. However, Justice Saylor highlighted that while the General Assembly did leave open plenty of issues in the MVFRL, he reasoned that the legislative delegation of authority to the Insurance Department functioned as a limitation on an insurer's ability to fully dictate coverage. *Id.* at 230. In support of this position, Justice Saylor highlighted the many tools and functions that the General Assembly afforded the Insurance Department under the MVFRL, indicating its intent to have the agency fill in the MVFRL's gaps as opposed to the insurance industry or the courts. *Id.* at 230-31. Based on the limited regulations promulgated by the Insurance Department, Justice Saylor found that the Insurance Department did not authorize the "regular use" exclusion, and thus it was not an available coverage exclusion to be employed by insurance companies. *Id.* at 231.

Nine years later in *Williams*, this time with Justice Saylor agreeing with the Majority, we again upheld the "regular use" exclusion. *Williams*, 32 A.3d 1195. Williams, a Pennsylvania State Police Trooper, was seriously injured in an automobile accident while operating a vehicle owned and maintained by the Pennsylvania State Police. *Id.* at 1197. At the time of the accident, Williams also maintained a household policy on his personal automobile which included UIM coverage subject to a "regular use" exclusion. *Id.*

---

the overarching policy concern of the [MVFRL][.]"); *id.* at 1210-11 (Baer, J., concurring) ("I join my colleagues in calling for advocates and the judiciary to cease their continued reliance on the unthinking perpetuation of the long-ameliorated concern for cost containment[.]"); *id.* at 1211-13 (Todd, J., concurring) ("I join those Justices who eschew the mantra of cost containment—used by various courts to rotely limit the rights of the insureds—in favor of a recognition of other equally important policies and goals that are foundational to the MVFRL, such as the remedial objectives of the statute and the coverage rights of the insureds."); *Heller v. Pa. League of Cities and Muns.*, 32 A.3d 1213, 1222 (Pa. 2011) ("[T]he cost containment objective cannot be mechanically invoked as justification for every contractual provision that restricts coverage and purportedly lessens the cost of insurance.").

Williams sought to recover UIM benefits from his household policy; however, his insurer denied coverage due to the "regular use" exclusion. *Id.*

On appeal to this Court, we limited our review to "[w]hether, under the MVFRL and our decision in *Burstein*[], the 'regular-use' exclusion to [UIM] coverage … is valid where the insured is a police officer, who has sustained bodily injury in the course of performing his duties while driving a police vehicle, for which vehicle he could not have obtained [UIM] coverage." *Williams v. GEICO Gov't Emp. Ins. Co.*, 986 A.2d 45 (Pa. 2009) (per curiam). The insurer in *Williams* presented the same cost containment arguments that were asserted in *Burstein*. *Williams*, 32 A.3d at 1199. The *Williams* Court, just as the *Burstein* Court, was principally focused on public policy. *Id.* Although Williams, as a first responder and a member of law enforcement, attempted to distinguish the facts of his case from the facts of *Burstein*, this Court reasoned that the "crucial factors underlying *Burstein* and [*Williams*] [were] identical[.]" *Id.* at 1206. Thus, we found that Williams' position conflicted with the cost containment policies of the MVFRL and there was no clear overriding policy favoring first responders under this scenario, and we "reaffirm[ed] *Burstein* and [held] that the regular-use exclusion is not void against public policy." *Id.*

Following this analysis, the Court shifted to Williams' argument that "the regular-use exclusion violates 75 Pa.C.S. § 1731, specifically with regard to subsections (c) and (c.1)."[15] *Id.* at 1207. In finding that it did not, the *Williams* Court analogized the case to *Baker* which involved another exclusion justified by the insurers under the same policy rationale. *Id.* at 1208-09. *Baker* addressed Section 1738 of the MVFRL, otherwise known

---

[15] Section 1731(c) defines UIM coverage and sets forth the statutorily prescribed rejection of coverage form, and Section 1731(c.1) contains the requirements for the form of waiver of coverage. *See* supra note 3.

as the "stacking provision,"[16] which contained language similar to that of Section 1731.[17] *Id.* Specifically, *Baker* addressed the "household" exclusion, which excludes stacking of UIM coverage when injuries sustained by anyone protected under the policy is occupying a vehicle owned by the insured that is not listed under that same policy. *Baker*, 972 A.2d at 509. The insured in *Baker* had an automobile policy through Erie to cover his three vehicles, and the policy included stackable UIM coverage. *Id.* at 508-09. Baker also had a motorcycle that was covered under a separate policy issued by a different insurance company, and he also opted for UIM coverage under his motorcycle policy. *Id* at 509. Baker was injured in an accident while operating his motorcycle, and after receiving the UIM coverage limits from his motorcycle policy, he sought to stack coverage from his automobile policy; however, Erie declined based on the "household" exclusion contained in its policy. *Id.* Although Baker argued that the "household" exclusion operated as a "disguised waiver," given that the MVFRL provides the exclusive procedure to waive stacking of coverage, a plurality of this Court disagreed. *Id.* at 511. Therein, the *Baker* plurality reasoned that the "household" exclusion does not involve "stacking" at all and that it operates as "a valid and unambiguous preclusion of coverage of unknown risks." *Id.*

Relying on the rationale set forth in *Baker* validating the "household" exclusion, the *Williams* Court found that the "regular use" exclusion resulted in "neither an implicit waiver

---

[16] Paradoxically, the Court rejected Williams' reliance on extra-jurisdictional cases to support his argument that the "regular use" exclusion acted as an implicit waiver of UIM coverage argument because those cases "relate[d] to stacking of UIM benefits, which [was] not at issue" in *Williams*. *Williams*, 32 A.3d at 1207 n.20. However, it then proceeded to analogize to *Baker*, a Pennsylvania case related to the stacking of UIM benefits.

[17] Specifically, the *Williams* Court noted that Section 1738(d) contained a specific written waiver form to reject stacking of UM/UIM coverage similar to the required written waiver form identified in Section 1731(c). *Williams*, 32 A.3d at 1208.

of coverage nor an improper limitation on the statutorily mandated coverage." *Id.* at 1208. Instead, the *Williams* Court found that the "regular use" exclusion served the same cost containment concerns of precluding coverage of "unknown risks." *Id.* at 1207-08.

In addressing the question of whether it was time to reconsider the *Burstein* holding, the Court found that to do so would violate the rules of statutory construction and the principles of stare decisis. *Id.* (citing *Commonwealth v. Mitchell*, 902 A.2d 430 (Pa. 2006) ("The failure of the General Assembly to change the law which has been interpreted by the courts creates a presumption that the interpretation was in accordance with the legislative intent; otherwise the General Assembly would have changed the law in a subsequent amendment.")). Noting that the General Assembly had not amended Section 1731 in the years since *Burstein*, the *Williams* Court found this to be an indication that our decision in *Burstein* comported with legislative intent recognizing that *Burstein* ruled that the express language of the MVFRL does not preclude a "regular use" exclusion. *Id.* at 1209.

Then-Justices Saylor, Baer, and Todd all authored concurring opinions to discuss the policy objectives of the MVFRL and suggested that the Court should reevaluate its position that cost containment served as the predominant policy underlying the MVFRL. *Williams*, 32 A.3d at 1209-13. Then-Justice Saylor also addressed his dissent in *Burstein* which recognized that UIM coverage was not intended to be universally portable but indicated that he was taking a step back from the position that the "regular use" exclusion violated public policy. *Id.* at 1209-10. Given that neither the General Assembly nor the Insurance Department had made any changes to the insurance landscape since *Burstein*, Justice Saylor reasoned that "rightly or wrongly, much latitude has been left to the insurance companies in determining the appropriate degree of portability." *Id.* at 1210.

There is no doubt that this Court held in both *Burstein* and *Williams* that the "regular use" exclusion is permissible under the MVFRL, and that the interpretation has persisted for two decades without a legislative response. We recognize that our analyses with respect to questions of statutory violations and those of public policy are different.[18]

> [A]s a general matter, a challenger who asserts that clear and unambiguous contract provisions, such as the ones at issue in this case, are void as against public policy carries a heavy burden of proof. *Generette*, 957 A.2d at 1190. This is because public policy "is more than a vague goal which may be used to circumvent the plain meaning of the contract." *Eichelman v. Nationwide Ins. Co.*, 551 Pa. 558, 711 A.2d 1006, 1008 (Pa. 1998). Nevertheless, "[w]hile we are wary to declare

---

[18] While the Concurring Opinion suggests that we "fail[] to appreciate the difference between public policy decisions (like *Burstein*) and plain language decisions (like *Gallagher* and the decision below)[,]," Concurring Op. at 12 (Wecht, J.), it is the Concurring Opinion that fails to acknowledge that the *Burstein* Court relied on the plain language of the MVFRL in its rejection of the Bursteins' argument in favor of universal portability of UIM coverage. *Burstein*, 809 A.2d at 209.

As discussed, the *Burstein* court addressed the UIM portability claim by analyzing the text of the MVFRL. *See* supra p. 19 & n.12. It did so in a straightforward textual comparison highlighting the General Assembly's designation of a list of insurance benefits that follow the person by virtue of the priority of the insurance policies under which the insured is entitled to recover benefits. *Burstein*, 809 A.2d at 209 (discussing 75 Pa.C.S. §§ 1702 and 1713). While first party benefits are recoverable in the first instance from the policy on which the insured is the named insured under Section 1713(a)(1), UIM benefits are first recoverable under the policy covering the motor vehicle occupied by the injured person at the time of the accident pursuant to Section 1733(a)(1). Thus, under the statute, UIM benefits do not "follow the person," i.e., they are not universally portable in the same manner as first party benefits. *Burstein*, 809 A.2d at 209. In so ruling, this Court rejected the intermediate appellate court's contrary textual interpretation that UIM coverage is a universally portable first party benefit. *Burstein v. Prudential Prop. & Cas. Ins. Co.*, 742 A.2d 684, 688 (Pa. Super. 1999), *reversed by Burstein*, 809 A.2d at 210.

We do not "overstat[e]" *Burstein*'s significance at the risk of foreclosing novel interpretations of the MVFRL, which "the *Burstein* Court never even had occasion to consider." Concurring Op. at 13 & 15 (Wecht, J.). To be clear, we do not say *Burstein* forecloses all novel plain language arguments, as the Concurring Opinion would suggest; however, we do read it to reject the precise argument directly before us. The Insureds' argument is not novel, but merely a recitation of one of the same arguments previously rejected by this Court.

> contractual language invalid as against public policy, we are obliged to find contractual language to be contrary to public policy when it violates statutory language." *Generette*, 957 A.2d at 1190-91. Thus, "stipulations in a contract of insurance in conflict with, or repugnant to, statutory provisions which are applicable to, and consequently form a part of, the contract, must yield to the statute, and are invalid, since contracts cannot change existing statutory laws." *Id.* (quoting *Prudential Property*, 813 A.2d at 750).

*Sayles*, 219 A.3d at 1122-23. However, "[p]ublic policy is to be ascertained by reference to the laws and legal precedents and not from general considerations of supposed public interest." *Paylor v. Hartford Ins. Co.*, 640 A.2d 1234, 1235 (Pa. 1994) (citing *Guardian Life Ins. Co. v. Zerance*, 479 A.2d 949, 954 (Pa. 1984)). Thus, while decisions resolving public policy and those solely construing statutory text may, at times, present distinct questions and analyses, even when addressing questions of public policy, we must look to the law and the relevant statutory language.

At its core, the question before us concerns the universal portability of UIM coverage, a debate which began with *Burstein* where the insured first set forth the argument that the MVFRL supports such a concept. Although the challenge in *Burstein* was concerned with a question of whether the "regular use" exclusion violated public policy,[19] this Court still looked to the entirety of the MVFRL to reject the Bursteins' universal portability claim. *Burstein*, 809 A.2d at 208-09. Similarly, the *Williams* Court relied on *Burstein* to reject Williams' argument that Section 1731 promoted universal portability, as well.[20]

---

[19] *Burstein*, 809 A.2d at 209 ("[T]he only issue in this appeal is whether the regularly used, non-owned car exclusion and its contractual restraint on UIM portability violate a clearly expressed public policy.").

[20] Although Williams did not explicitly argue that MVFRL promoted universal portability, he asserted that "[t]he plain, unambiguous language in 75 Pa.C.S.[] §1731 imposes a mandatory requirement on the insurer to obtain an insured's signature if opting out of UM/[UIM] coverage. Excluding an insured's UM/[UIM] coverage without the written (continued…)

Regardless of its failure to acknowledge the broad implications of its construction of Section 1731, the Superior Court's decision in this matter undoubtedly stands for the proposition that UIM coverage is universally portable. In other words, by finding that UIM coverage is mandatory in virtually all instances, absent an insured's voluntary waiver of such coverage, the coverage would necessarily have to follow the person. *Rush*, 265 A.3d at 796 (reasoning that UIM coverage applies broadly whenever an insured suffers injuries arising out of the use of a motor vehicle regardless of vehicle ownership); *Burstein*, 809 A.2d at 209 (explaining that, pursuant to the concept of universal portability, UIM coverage "follows the person, not the vehicle"). If UIM coverage must follow the person in all circumstances, then an insurer cannot exclude coverage in any situation. The Insureds ignore this fact, insisting that the Superior Court's holding does not invalidate all exclusions. Insureds' Brief at 56. Instead, the Insureds somehow read the Superior Court as "only" holding that an exclusion that violates the language of the MVFRL is invalid, and that the "regular use" exclusion is one such exclusion. *Id.* However, this ignores the Superior Court's actual conclusion that UIM coverage must be available in all circumstances, no matter what motor vehicle is used, except when UIM coverage is waived by the insured. *Rush*, 265 A.3d at 797. Given the nature of the arguments before us and the Superior Court's holding, we cannot ignore the relevance of *Burstein*'s discussion to our current analysis. The Superior Court in this matter viewed Section 1731 in a vacuum. However, this Court understood in *Burstein* that the coverage scheme is not limited to one provision, but rather the entirety of the MVFRL.

---

rejection requirement of 75 Pa.C.S.[] § 1731 is a violation of the statute." Williams' Brief, 1/14/2010, at 21. In other words, Williams argued that absent a waiver of coverage, an insurer is mandated to provide coverage, including in a regularly used, non-owned vehicle. This is precisely what the Superior Court held in the instant matter, effectively concluding that UIM coverage is portable.

In addressing UIM portability and the MVFRL as a whole, the *Burstein* Court was responding directly to the Bursteins' argument that "UIM coverage is a first party benefit which is personal and portable … in nature without limitation[,]" and specifically that Section 1731(c) expressly "allow[ed] the insured to be using any motor vehicle" for the purposes of receiving UIM coverage. Bursteins' Brief, 11/28/2000, at 21-22. The Bursteins viewed the insurer's "regular use" exclusion as violative of public policy because it "change[d] the personal and portable nature of UIM coverage and rewr[o]te the MVFRL." *Id.* at 22. Thus, the public policy question resolved by this Court encompassed the rejection of the Bursteins' statutorily-based universal portability argument, including reliance on Section 1731(c). The *Williams* Court considered *Burstein* to stand for the ruling that "the express language of the MVFRL does not preclude the regular-use exclusion." *Williams*, 32 A.3d at 1209. The only portion of the *Burstein* opinion addressing the text of the MVFRL was its rejection of UIM portability in light of Section 1733 and the statutory definition of first party benefits and their priority of payment, and the *Williams* Court embraced that analysis. *Id.* ("We ruled in *Burstein* that the express language of the MVFRL does not preclude the regular-use exclusion … . [W]e affirm the decision in *Burstein*[.]").

Contrary to the Superior Court's assertion,[21] one of the questions directly before the *Williams* Court was whether the "regular use" exclusion violated the express terms of the MVFRL. *See Williams*, 32 A.3d at 1207 ("Appellant … also assert[s] that the regular-use exclusion violates the express language of the MVFRL."); *Williams*, 986 A.2d 45 ("Whether, under the MVFRL … the 'regular-use' exclusion to [UIM] coverage … is valid[.]"). The *Williams* Court embarked on answering the very same question before this

---

[21] *Rush*, 265 A.3d at 797-98 (stating that whether "a 'regular use' exclusion clause … violate[d] the express terms of the MVFRL … was not the issue before the [*Williams*] Court on appeal.").

Court today.[22]   While the *Williams* Court did not engage in an analysis of the text of Section 1731(c)-(c.1), its failure to do so can be explained by its affirmance of *Burstein*'s conclusion that other, more pointed provisions of the MVFRL precluded a finding that UIM coverage is universally portable.

While the *Williams* Court affirmed *Burstein*'s holding that UIM coverage is not universally portable, it also turned to what it viewed as analogous claims resolved by this Court in *Baker*.[23]   *See Williams*, 32 A.3d at 1207 ("We recently addressed a similar argument involving the household exclusion to UIM coverage [in *Baker*].").   The Superior Court in the instant matter, viewing this discussion as the sole basis for the decision in *Williams*, stated that *Baker* has since been abrogated by this Court in *Gallagher*, *Rush*, 265 A.3d at 798, a position that this Court has similarly expressed.   *See Erie Ins. Exch. v. Mione*, 289 A.3d 524, 528 & n.10 (Pa. 2023) (citing to *Baker* as having been overruled by *Gallagher*).

In *Gallagher*, we addressed the validity of a "household" exclusion as applied to the stacking of coverage prescribed in Section 1738 of the MVFRL.  *Gallagher*, 201 A.3d 131.   The insured in that case had two insurance policies both of which were issued by the same company: one policy for his motorcycle and the other for two automobiles.  *Id.* at 132-33.   An insured can waive the ability to stack UIM coverage.[24]   The insured

---

[22]   In advancing his UIM portability argument, Williams relied heavily on then Justice Saylor's dissent in *Burstein*.  *Williams*, 32 A.3d at 1199.

[23] In *Baker*, the insurer argued that the household exclusion was justified by the cost containment public policy.  *Baker*, 972 A.d at 511.  Baker countered by arguing that the exclusion was invalid because it was an implicit waiver of coverage without him having executed a written waiver.  *Id.* at 510.  Specifically, Baker claimed that the exclusion violated Section 1738(d)'s requirement that the insured be provided with a written waiver to reject stacking of coverage.  *Id.* at 511-12.  A plurality of the Court in *Baker* held that the household exclusion was not a waiver, but rather "a valid and unambiguous preclusion of coverage of unknown risks."  *Id.* at 511.

[24]  Section 1738(d) provides, as follows:
(continued…)

accepted and paid for stacked UM/UIM coverage for both policies. *Id.* at 133. After being injured in a motorcycle accident, the insured was paid UIM coverage under the motorcycle policy, but he was denied stacked coverage under the automobile policy based on the "household" exclusion contained in it.[25] *Id.* Unlike the plurality in *Baker*, this Court held that the "household" exclusion contained in the policy violated Section 1738 of the MVFRL. *Id.* at 132. In examining Section 1738, we reasoned that stacked UM/UIM coverage is the default coverage absent express waiver. *Id.* at 137. There was no dispute that the insured in *Gallagher* had opted and paid for stacked coverage on his policies,

---

**(d) Forms.--**

> (1) The named insured shall be informed that he may exercise the waiver of the stacked limits of uninsured motorist coverage by signing the following written rejection form:

> **UNINSURED COVERAGE LIMITS**

> By signing this waiver, I am rejecting stacked limits of uninsured motorist coverage under the policy for myself and members of my household under which the limits of coverage available would be the sum of limits for each motor vehicle insured under the policy. Instead, the limits of coverage that I am purchasing shall be reduced to the limits stated in the policy. I knowingly and voluntarily reject the stacked limits of coverage. I understand that my premiums will be reduced if I reject this coverage.

75 Pa.C.S. § 1738(d).

[25] Specifically, the "household" exclusion in *Gallagher* provided:

> This coverage does not apply to bodily injury while occupying or from being struck by a vehicle owned or leased by you or a relative that is not insured for Underinsured Motorists Coverage under this policy.

*Gallagher*, 201 A.3d at 133.

and thus the "household" exclusion "act[ed] as a de facto waiver of stacked UIM coverage provided for in the MVFRL, despite the indisputable reality that Gallagher did not sign the statutorily-prescribed UIM coverage waiver form." *Id.* at 138. Moreover, we determined that the insurer in that case could not invoke the "unknown risk" argument that it "as the insurer of the passenger cars is unaware of the potentiality of stacking between the car policy and the motorcycle policy" because (unlike in *Baker*) the same insurance company "sold both of the policies to Gallagher and collected premiums for stacked coverage from him." *Id.*

We rejected the argument advanced by the insurer that stacking was not implicated because the "household" exclusion in Gallagher's policy dictated that UIM coverage did not exist under the circumstances of this case. Agreeing, Justice Wecht, in dissent, espoused the view that the appropriate analysis required a determination in the first instance as to whether the insurance contract provided UIM coverage under the circumstances. Only if an exclusion of coverage was not applicable did the question of stacking come into play. *Id.* at 142 (Wecht, J., dissenting).

The Insureds argue that *Gallagher* stood for the proposition that the "household" exclusion was invalidated in its entirety as it conflicted with the language of the MVFRL. *See* Insureds' Brief at 39 ("[T]he *Gallagher* Court invalidated the [household] exclusion entirely, without exception, holding that 'the household vehicle exclusion violates the MVFRL; therefore, these exclusions are unenforceable as a matter of law.'"). With this understanding of the holding in *Gallagher*, Insureds argue that we should follow its analysis and conclude that absent a waiver of coverage under Section 1731(c)-(c.1), UIM coverage is available without regard to the "regular use" exclusion, similar to *Gallagher*'s "household" exclusion. However, in this Court's recent and unanimous decision in *Mione*,

we upheld the validity of a "household" exclusion, clarifying the scope of *Gallagher*'s holding.

In *Mione*, the insured waived UM/UIM coverage on his motorcycle policy, but he and his wife paid for stacked UM/UIM coverage on their separate automobile policy. *Id.* at 525-26. The insured sustained injuries following a motorcycle collision and sought to recover UIM benefits under the automobile policy. He was denied coverage because of the "household" exclusion contained in that policy. *Id.* at 526. The *Mione* Court distinguished the case from *Gallagher* by noting that the insured could not stack coverage, as he had not received UIM benefits under the motorcycle policy. Instead, he was seeking UIM benefits under the automobile policy in the first instance. *Id.* at 529. Thus, the "household" exclusion in the automobile policy was enforceable in that it excluded coverage for the injuries sustained when he was operating his motorcycle, a vehicle that was not insured for UIM coverage under his automobile policy. The Court found that for the "household" exclusion to act as an impermissible de facto waiver of stacking, the insured must have received UIM coverage under some other policy first, or else Section 1738 is not implicated. *Id.* at 530. This Court made clear that "the holding in *Gallagher* was based upon the unique facts before us in that case, and that the decision there should be construed narrowly." *Mione*, 289 A.3d at 530 (citing *Gallagher*, 201 A.3d at 139 n.8 ("As in every case, we are deciding the discrete issue before the Court and holding that the household vehicle exclusion is unenforceable because it violates the MVFRL.")).

Particularly salient to the issue before us is the *Mione* Court's implicit rejection of the notion that UIM coverage is universally portable and not susceptible to exclusions from coverage. We unanimously rejected Mione's argument that because he was an insured under the automobile policy, its UIM coverage was applicable to him while

operating his motorcycle, i.e., the coverage followed him regardless of the vehicle he was driving. Instead, we recognized the enforceability of the "household" exclusion in the automobile policy. Thus, the Insureds' argument and some federal courts' predictions[26] that *Gallagher* controls the enforceability of the "regular use" exclusion to UIM coverage conflates issues surrounding stacked UIM coverage under Section 1738 with the issue of portability of UIM coverage arising under Section 1731.

What does control the resolution of the issue before us is our precedent directly addressing the validity of the "regular use" exclusion. The Superior Court in *Burstein* arrived at effectively the same conclusion as the Superior Court in the instant matter: "[I]f an individual purchases [UIM] coverage, that individual will be protected from negligent drivers with inadequate coverage regardless of the vehicle in which he or she happens to be injured." *Burstein v. Prudential Prop. & Cas. Ins. Co.*, 742 A.2d 684, 688 (Pa. Super. 1999), *reversed by Burstein*, 809 A.2d at 210. The Superior Court in *Burstein* mischaracterized UIM coverage as "first-party coverage and therefore necessarily follows the person, not the vehicle." *Id.* In other words, it held that UIM coverage is universally portable. Here, the Superior Court resurrected that holding by construing Section 1731 in isolation, concluding that UIM coverage is mandatory in "situations where an insured is injured arising out of the use of **a** motor vehicle." *Rush*, 265 A.3d at 797 (emphasis in original) (internal quotations omitted). In other words, the Superior Court in this matter reasoned that UIM coverage follows the person, not the vehicle. In so doing, it provided the same answer as the Superior Court in *Burstein* under the guise of answering a different question. There is no material difference between the Superior Court's holding

---

[26] *See, e.g.*, *Evanina*, 587 F.Supp.3d at 209 (predicting, based on *Gallagher*, "that the Pennsylvania Supreme Court will find the regular use exclusion is contrary to the unambiguous provisions of the MVFRL and therefore invalid and unenforceable, as it did with respect to the household vehicle exclusion").

in *Burstein* and its holding in the instant matter, and this Court rejected that conclusion based on the provisions of the MVFRL that directly address the portability of coverage.

In *Burstein*, we recognized that only first party benefits, which are explicitly defined in the MVFRL, can follow the person, as demonstrated by its statutorily prescribed priority of coverage. *Burstein*, 809 A.2d at 209 (citing 75 Pa.C.S. § 1702). The same is simply not true of UIM coverage. It is not defined as a first party benefit, nor does it follow the person in all circumstances based on Section 1733's priority of recovery. *Id.* (citing 75 Pa.C.S. § 1733(a)(1)). Despite the Superior Court's construction of 1731, we cannot conjure universal portability from a single provision.[27] Thus, we follow the *Burstein* Court's lead and accept its rationale in rejecting universal portability in light of the entirety of the MVFRL and its express language.[28]

---

[27] Moreover, we question the Superior Court's interpretation of Section 1731(c). To determine that UIM coverage was mandatory under all circumstances, unless waived, i.e., that it is universally portable, the Superior Court had to change the actual language of the provision by ignoring the word "person" and instead rewriting it to read "insured." *See, e.g.*, *Rush*, 265 A.3d at 796-97 ("Section 1731 mandates that insurers provide **insureds** coverage when the **insured** satisfies three requirements.") (citing 75 Pa.C.S. §§ 1731(c)-(c.1)) (emphasis added). The first sentence of Section 1731(c), which served as the basis for the Superior Court's conclusion, does not reference "insureds" but rather discusses UIM coverage and its applicability to "persons" who sustain injuries in motor vehicle accidents. To our reading, Section 1731(c) describes the basic concept of UIM coverage, but it cannot be read as a formula or a mandate that UIM coverage be provided to any person—a named insured or anyone else. That would be an absurd result.

[28] The textual basis for the claim of universal UIM portability in *Burstein* was the same as the basis in this case.

In ruling in favor of the Bursteins, the Superior Court in that matter found "[t]he statutory language of the MVFRL" to be "key" to its holding that public policy supported the notion that UIM coverage is a universally portable first party benefit. *Burstein*, 742 A.2d at 688 (Pa. Super 1999). In support of that rationale, the Superior Court in *Burstein* reasoned that "[i]f the tortfeasor's policy limits are inadequate, the individual is … entitled to recover [UIM] coverage from his or her personal insurance carrier, provided that the individual did not waive such coverage." *Id.* Although the Superior Court in *Burstein* did not cite to any provision of the MVFRL for the proposition that insurers are "entitled" to UIM coverage, it is clear that it was referring to Section 1731, as that is the only provision that refers to the (continued…)

effect of waiving UIM coverage. This reasoning mirrors the Superior Court's interpretation in this matter, wherein the Superior Court concluded that the plain language of Section 1731 "mandates" that insurers provide UIM coverage so long as the insured "[(1)] ha[s] suffered injuries arising out of the maintenance or use of a motor vehicle; (2) [is] legally entitled to recover damages from the at-fault underinsured driver; and (3) ha[s] not rejected UIM coverage[.]" *Rush*, 265 A.3d at 796-97.

Moreover, following the appeal from the Superior Court, the Bursteins argued in favor of universal portability of UIM coverage based on the statutory language of Section 1731 of the MVFRL. The Bursteins asserted that, under Section 1731, "[UIM] coverage is extended to persons who are injured by underinsured motor vehicles when they are using a 'motor vehicle.'" Bursteins' Brief, 11/28/2000, at 21. According to the Bursteins, this meant that the MVFRL "allows the insured to be using any motor vehicle" to receive UIM coverage. *Id.* Specifically, the Bursteins argued that "the wording of … [Section] 1731(c) indicates that the legislature intended UIM coverage to be personal and portable in nature without limitation." *Id.* at 21-22. While the other arguments made by the Bursteins were strictly public policy arguments against the "regular use" exclusion itself, their argument in favor of universal portability of UIM coverage was specifically tied to their interpretation of Section 1731, in which they likened UIM coverage to "a first party benefit which is personal and portable." *Id.* at 21. This interpretation served as the basis for the "broad claims about the universal portability" of UIM coverage that this Court rejected in *Burstein*. *Burstein*, 809 A.2d at 208-09. And we rejected the notion that Section 1731 mandated universal portability of UIM coverage by examining how first party benefits actually "follow the person, not the vehicle," as opposed to the priority of recovery set forth in the MVFRL for UIM coverage. *Id.* at 209; *see also* supra note 18. It is true that the *Burstein* Court did not cite to Section 1731 when rejecting the Bursteins' universal portability argument. Concurring Op. at 13 n.37 (Wecht, J.). However, given that the **only** textual argument explicitly in support of finding universal portability of UIM coverage was an interpretation of Section 1731, the *Burstein* Court decided that the broader import of the meaning of first party benefits in the context of the totality of the MVFRL took precedence over the language of Section 1731.

Despite the Concurring Opinion's position that it is "utter fiction" that the only textual argument explicitly in favor of finding universal portability of UIM coverage was the one discussed above, Concurring Op. at 13-14 n.37, this is a fact. The Concurring Opinion is correct that several other arguments were presented to the *Burstein* Court, including a range of public policy arguments. *Id.* None of those were textual arguments in favor of finding universal portability of UIM coverage. We are in no way characterizing this as the "only relevant argument" raised before the *Burstein* Court, *id.*, but rather the only one that is identical to the textual argument currently before us in support of universal portability of UIM coverage. The Concurring Opinion suggests that it is improper to consider the arguments presented in the briefs of the parties submitted to this Court in order to give
(continued…)

Once it is decided that UIM coverage is not universally portable—given the express non-priority of an insured's UIM policy coverage in Section 1733 and the contrary priority of coverage for first party benefits—any argument that Section 1731 prohibits exclusions from coverage in the insurance contract must fail. If the MVFRL does not require that UIM coverage follow the insured in all circumstances, then the MVFRL cannot be read to prohibit exclusions from UIM coverage. Consequently, the insurance contract controls the scope of UIM coverage and the "regular use" exclusion is enforceable.

The *Burstein* Court, by rejecting the argument that UIM coverage is not amenable to insurance policy exclusions because the coverage is universally portable, directly addressed the question before us. We would further note that the Insureds have not asked us to overrule either *Burstein* or *Williams* cases, but rather that we distinguish them. This is in spite of the fact that by affirming the Superior Court's decision, we would be required to not only upend *Burstein* and *Williams* but every case upholding a UM/UIM coverage exclusion. Erie's Brief at 43 (observing that the Superior Court's "reasoning would render the validity of **all** UM/UIM exclusions and policy limitations in Pennsylvania void"). Ultimately, because we find that *Burstein* and *Williams* resolved the issue presented in this appeal, we continue to hold that the "regular use" exclusion is a permissible limitation of UIM coverage under the MVFRL. With decades of reliance by insureds and insurers, and no justification to allow this Court to depart from decades of

---

context to the decision issued in the appeal. This is curious since the arguments presented by the parties set the parameters for the resolution of appeals.

established law, we maintain our course unless and until the General Assembly or the Insurance Department acts in a way that would suggest we do otherwise.[29]

To conclude, we are bound by our prior decisions in *Burstein* and *Williams* in upholding the "regular use" exclusion as a permissible limitation of UIM coverage. Accordingly, the Superior Court's conclusion that the "regular use" exclusion violates the language of the MVFRL is erroneous. Thus, we hold that the "regular use" exclusion in the Insureds' policy is valid and enforceable,[30] and we reverse the order of the Superior Court.

---

[29] We observe that such a limitation of coverage is seemingly consistent with the Insurance Department's historical and current treatment of regularly used, non-owned vehicles. Although the last time the Insurance Department updated the relevant regulations was in 1979 and those regulations make no reference to UIM coverage, as they only apply to UM coverage, there is no discernible basis to distinguish UM and UIM coverage in terms of limitations of coverage. *See Generette*, 957 A.2d at 1195 n.6 (Saylor, J., concurring and dissenting). From what little we do have from the Insurance Department, we can discern that the Insurance Department did not view regularly used, non-owned vehicles as automobiles afforded coverage under an insurance policy. Through reference to a national standard form, the Insurance Department set forth a definition of "insured automobile," which "shall not include" "an automobile furnished for the regular use of the principal named insured or any resident of the same household." 31 Pa. Code § 63.2, Exhibit C § II(b)(3)(iv). In his dissent in *Burstein*, Justice Saylor read this language as only "allow[ing] for a limited regularly used non-owned car exclusion pertaining to persons who are not named insureds or household family members." *Burstein*, 809 A.2d at 231 n.38 (Saylor, J., dissenting). Contrary to Justice Saylor, we read this language to suggest that a non-owned automobile furnished for regular use of the insured or household residents shall not be considered a covered automobile. Thus, to our reading, it appears that the "regular use" exclusion has the blessing of the Insurance Department.

[30] We need not address the Insureds' claim that the "regular use" exclusion violates Section 1733 at length, as we find no mandate of UIM coverage or prohibition of coverage exclusions within that provision. Moreover, despite the Insureds' reliance on *Generette*, we do not agree that the "regular use" exclusion operates similarly to the "other-insurance" limitation at issue in that case, as the latter provision unlawfully created "gap coverage" by subtracting the amount of available coverage. *Generette*, 957 A.2d at 1191. In fact, we reasoned that the language of Section 1733 was "silent" with respect to other insurance limitations. *Id.* at 1191 n.15.

(continued…)

Chief Justice Todd and Justice Dougherty join the opinion.

Justice Wecht files a concurring opinion.

Justices Mundy and Brobson did not participate in the consideration or decision of this matter.

---

The Insured's final statutory argument is that the "regular use" exclusion violates Section 1738 of the MVFRL, which governs stacking of UIM coverage. Given that the facts of this case do not implicate stacking of coverage, we need not address this claim.